**NOT FOR PUBLICATION**                                                                             **CLOSED**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEUTSCHE BANK NATIONAL TRUST CO., As Trustee of Argent Securities, Inc., Asset Backed Pass Through Certificates Series 2005-W5 under the Pooling and Servicing Agreement Dated as of November 1, 2005 Without Recourse, | :<br>:<br>:<br>:<br>:<br>:<br>: |
| Plaintiff, | : Civil Action No. 08-2174 (JAP) |
| v. | : **OPINION** |
| ANTHONY F. LACAPRIA and VIRGINIA LACAPRIA, | : |
| Defendants/Third Party Plaintiffs, | : |
| v. | : |
| FIRST HALLMARK MORTGAGE CORP., HOWARD BANERMAN; ARGENT MORTGAGE CO., LLC, CITI RESIDENTIAL LENDING, INC.; AMC MORTGAGE SERVICES; JOHN DOES 1-12; ABC CORP. NOS 1-10, | : |
| Third Party Defendants. | : |

PISANO, District Judge.

Plaintiff Deutsche Bank National Trust brought this action against Defendants Anthony and Virginia Lacapria initiating a mortgage foreclosure. Defendants responded with numerous defenses and counterclaims against Plaintiff relating to the origination of their mortgage as well as third party complaints against First Hallmark Mortgage, Howard Banerman, Argent Mortgage, Citi Residential Lending and AMC Mortgage Services. Defendants' claims are based on the

1

Truth in Lending Act ("TILA"), Real Estate Settlement Procedures Act ("RESPA") and New Jersey Consumer Fraud Act ("CFA"). Additionally, the Lacaprias raised claims of common law fraud, unconscionability, negligence, breach of contract, unjust enrichment, breach of duty of good faith and fair dealing and breach of fiduciary duty. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

Presently before the Court are motions for summary judgment filed by the Plaintiff Deutsche Bank National Trust and Third Party Defendants First Hallmark Mortgage, Howard Banerman, Argent Mortgage and Citi Residential Lending. The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth herein, the Court grants the Plaintiff's and Third Party Defendants' motions for summary judgment.

I.      **Background**[1]

Defendants Anthony and Virginia Lacapria are the owners of real property located at 34 Annapolis Road in South Toms River, NJ. In 2005, Defendants were interested in refinancing their property with a thirty-year fixed mortgage. However, on September 21, 2005, Defendant Anthony Lacapria applied to First Hallmark Mortgage for an adjustable rate mortgage ("ARM") to refinance the property. *See* Pl.'s Br., Ex. J. Howard Banerman was the mortgage consultant from First Hallmark Mortgage that worked on the Defendants' refinancing loan. On October 20, 2005, Defendants executed an adjustable rate mortgage on their Toms River Property with First Hallmark Mortgage with a principal sum of $239,000. Although Anthony claims that he did not read all the loan documents and was unaware he was executing an ARM, Defendants signed and initialed the Notice of the Right to Cancel, ARM Disclosure, RESPA Disclosure,

---

[1] The background is drawn from the material facts set forth in the briefing by Plaintiff, Defendants and Third Party Defendants as well as referenced exhibits.

Acknowledgment of Receipt of all loan documents, Initial TILA estimate at application, Final TILA Disclosure, Good Faith Estimate and HUD-1.  *See* Pl.'s Br., Ex. M, N, O, P, Q, R, S, & T.  Such documents disclosed to the Defendants their mortgage payments, interest rate and loan amount.  Defendants chose not to be represented by a lawyer in the execution of this mortgage.  *See* Pl.'s Br., Ex. I at 15.  Further, Anthony admitted that he did not ask any questions at the closing and wished to have the closing at a convenient location at the local diner.  On November 1, 2005, the mortgage was recorded.

Defendants' purpose for refinancing their home was to "pull as much equity out as possible" from the property.  *See* Pl.'s Br., Ex. I at 11.  At the execution of the mortgage, Defendants received about $40,000 in cash in order to make a $20,000 down payment on a new house, to assist their son in paying education loans, and to retain a $10,000 to $12,000 surplus to pay off their First Hallmark mortgage in the event that their Toms River property did not sell.  Defendants believed that their Toms River property would sell within thirty to sixty days of their refinance mortgage.   In January 2006, Defendants contracted to purchase property at 681 Lakehurst Road in Browns Mills, NJ.  In June 2006, the Defendants closed on the property and retained the home as their primary residence.  Defendants financed a mortgage on their Brown Mills property through Banerman and First Hallmark and never complained to either about their Toms River property's mortgage.  V. Lacapria Dep., 8:12-16, 10:7-22.

Ultimately, Defendants were unable to sell their Toms River property.  Around December 2006, Defendants stopped making mortgage payments on their Toms River residence.  The Lacaprias, however, continued to make their monthly mortgage payments on their Brown Mills property.  On December 7, 2006, Defendants were sent a Notice of Intention to Foreclose which the Lacaprias acknowledge receiving, but not reading.

Prior to the notice of foreclosure, in October 2006, First Hallmark Mortgage assigned the Defendants' mortgage to Argent Mortgage Company which was recorded on December 11, 2006. On April 19, 2007, Argent Mortgage sold and assigned the mortgage to Plaintiff Deutsche Bank which was recorded on August 8, 2007. Between October 2005 and September 2007, AMC Mortgage Services serviced the Lacaprias' mortgage loan. From September 2007 to March 2009, Citi Residential Lending was the servicer of Defendants' loan.

On April 10, 2007, Plaintiff Deutsche Bank filed a foreclosure action against Defendants in Superior Court of New Jersey, Chancery Division, Ocean County. On March 28, 2008, Defendants responded with numerous defenses and counterclaims against Plaintiff and third party complaints against First Hallmark Mortgage, Howard Banerman, Argent Mortgage, Citi Residential Lending and AMC Mortgage Services. Defendants' claims are based on TILA, RESPA, and New Jersey's CFA. Additionally, the Lacaprias raised claims of common law fraud, unconscionability, negligence, breach of contract, unjust enrichment, breach of duty of good faith and fair dealing and breach of fiduciary duty. On May 5, 2008, the case was removed to the United States District Court pursuant to 28 U.S.C. § 1441.

II.  **Discussion**

    a.  <u>Summary Judgment Standard</u>

To prevail on a motion for summary judgment, the moving party must establish "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The district court must determine whether disputed issues of material fact exist, but the court cannot resolve factual disputes in a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

In determining whether a genuine issue of material fact exists, the court must view the facts in the light most favorable to the non-moving party and extend all reasonable inferences to that party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Stephens v. Kerrigan*, 122 F.3d 171, 176-77 (3d Cir. 1997). The moving party always bears the initial burden of demonstrating the absence of a genuine issue of material fact, regardless of which party ultimately would have the burden of persuasion at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its opening burden, the non-moving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. *Id*. at 324. Thus, the non-moving party may not rest upon the mere allegations or denials of its pleadings. *Id*. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322.

Once the moving-party has demonstrated to the court the absence of a material fact at issue, the Supreme Court has stated that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . ." *Matsushita*, 475 U.S. at 586-87 (citations omitted). In other words, "[i]f the evidence [submitted by the non-moving party] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

The Supreme Court has specifically recognized that "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupportable claims or defenses, and [] that [the rule] should be interpreted in a way that allows it to accomplish this purpose." *Celotex*, 477 U.S. at 323-24. Thus, "[w]hen the record is such that it would not

5

support a rational finding that an essential element of the non-moving party's claim or defense exists, summary judgment must be entered for the moving party." *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 341 (3d Cir. 1990).

    b. <u>Analysis</u>

        i. *TILA*

Defendants allege violations of the Truth in Lending Act against Plaintiff and Third Party Defendants stemming from the execution of their mortgage loan. Defendants' TILA claims are governed by the time limit for a borrower's right to rescind pursuant to 15 U.S.C. § 1635(f) and the time limitation for seeking damages for civil liability under 15 U.S.C. § 1640(e). For individuals seeking rescission, TILA mandates that "an obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first." 15 U.S.C. § 1635(f). However, the right to rescission in § 1635(f) is further restricted by § 1635(a) which states that in a consumer credit transaction in which a security interest is

> retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms . . . with a statement containing the material disclosures . . . whichever is later.

15 U.S.C. § 1635(a). Additionally, as to individuals seeking compensatory and statutory damages, any TILA action must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e).

Therefore, pursuant to § 1635(a) and § 1640(e), Defendants have failed to bring a timely TILA claim because Defendants did not bring an action within the one-year and three-day limitation period for remedies of damages and rescission. Defendants' TILA claims stem from

their mortgage loan finalized on October 20, 2005. Since Defendants did not bring their claims until March 28, 2008, the statute of limitations has expired and these claims are barred.

To overcome the three-day statute of limitation for rescission, Defendants argue that the lender never provided the accurate material disclosures and rescission forms required by TILA and as such the right to rescind is extended to three years from the closing pursuant to 12 C.F.R. 226.23(a)(3). However, no genuine issue of material fact exists as to whether Defendants were provided with the proper material disclosures and rescission forms as Defendants signed the acknowledgement of receipt for the Notice of Right to Cancel and executed an acknowledgement of receipt of all loan documents. Pursuant to 15 U.S.C. § 1635(c), such acknowledgments create a rebuttable presumption that disclosure occurred. Defendants' testimony that they did not remember getting such forms is insufficient to rebut this presumption. Therefore, there is no basis for extending the time period to rescind and Plaintiff and Third Party Defendants are granted summary judgment as to all TILA claims.

Furthermore, notwithstanding the expiration of the statute of limitations, Defendants have not substantiated a valid TILA claim. Defendants base their cause of action on the fact that Defendants failed to read their loan documents or did not remember receiving certain disclosures. However, without other evidence, a failure to read loan documents or remember executing such documents does not constitute a TILA violation. Additionally, Defendants claim that their mortgage loan was in violation of the Home Ownership and Equity Protection Act ("HOEPA") because they were not asked for income documents evidencing their ability to repay the debt. Yet, the testimony of Defendants contradicts this allegation when Defendant Anthony admitted that Bannerman requested and was provided with his income information. Further, Defendants' claims that the APR, Amount Financed, Total of Payments and Finance Charges in

the TILA disclosures were less than the actual APR were discredited by the Third Party Defendant Argent's expert witness who found the disclosures compliant with TILA. Hence, even if the claim was timely, Defendants have not provided adequate evidence to substantiate a TILA cause of action.

      ii. *RESPA*

Defendants' claim for violations of RESPA are governed by a one-year statute of limitations pursuant to 12 U.S.C. § 2614. RESPA requires that any action be brought "within one year in the case of violations of section 2607 or 2608 from the date of the occurrence of the violation." 12 U.S.C. § 2614. Hence, in order to have a valid RESPA claim, a party must bring a cause of action within one year of the alleged improper fee or kickback. *See* 12 U.S.C. § 2607.

Here, Defendants are alleging a cause of action under § 2607 for improper fees and costs at the closing of their mortgage loan. Since the closing on the mortgage loan occurred on October 20, 2005, Defendants were required to bring a cause of action within one year of the date of the incident. Because Defendants did not file their claim until March 19, 2008, summary judgment is granted to Plaintiff and Third Party Defendants as to RESPA claims due to an untimely cause of action.

      iii. *Fraud*

Defendants allege violations of the New Jersey Consumer Fraud Act along with a cause of action for common law fraud based on the alleged misrepresentations made to the Defendants which caused them to enter into their mortgage transaction. The New Jersey Consumer Fraud Act permits a private cause of action where an individual uses or employs "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with the intent that others

rely upon such concealment, suppression or omission in connection with the sale or advertisement of any merchandise or real estate . . . ." N.J. Stat. Ann. § 56:8-2.  To sustain a claim under the CFA, a party must show 1) unlawful conduct by the defendants, 2) an ascertainable loss on the part of the plaintiff, and 3) a causal relationship between the unlawful conduct and the party's ascertainable loss.  *New Jersey Citizen Action v. Schering-Plough Corp.*, 367 N.J. Super. 8, 12-13 (App. Div. 2003).  Additionally, in order to maintain a common law fraud claim, the moving party needs to demonstrate a material misrepresentation by the other party of a presently existing fact or past fact, knowledge or belief by the other party of its falsity, an intent that the moving party rely on the statement, reasonable reliance by the moving party, and resulting damages to the moving party.  *Liberty Mut. Ins. Co. v. Land*, 186 N.J. 163, 175 (2006).

     Defendants base their fraud claims on Banerman and First Hallmark's misstatements regarding the loan terms prior to closing—specifically that the mortgage loan would be a fixed interest rate compared to an ARM.  Even assuming that Third Party Defendants made such misstatements prior to the loan closing, Defendants have not shown that they reasonably relied on such information to their detriment or that there is any causal relationship between the statements and their loss.  As an initial factor, Defendant Anthony Lacapria applied to First Hallmark Mortgage for an adjustable rate mortgage, not a fixed rate mortgage.  Additionally, Defendants at closing signed a Borrower's Acknowledgment of Final Loan Terms in which they expressly acknowledged that the only terms of their agreement were in the loan documents: "Any agreements we have reached covering this loan transaction are contained in the loan documents you have signed today.  Your loan documents are the complete statement of the loan agreement reached between us."  Third Party Def. Argent's Br., Ex. K.  Further, if Defendants

9

had read the loan documents before signing, Defendants would have known that they were receiving an ARM like they had requested and would have been alerted to any alleged discrepancies with Third Party Defendants' representations prior to signing. Moreover, Defendants at the closing chose not to ask any questions and to not have a lawyer present to advise them on the transaction. Hence, Defendants' reliance on alleged statements made prior to the closing which contradict the final loan terms is not reasonable as Defendants requested an ARM and then chose not to read the terms of their agreement. Therefore, Defendants cannot support a claim of fraud and summary judgment is granted to Plaintiff and Third Party Defendants for both the common-law fraud claims and causes of action under New Jersey's CFA.

        iv.  *Negligence*

Defendants' claims for negligence against Plaintiff and Third Party Defendants are governed by a two-year statute of limitations pursuant to N.J. Stat. Ann. § 2A:14-2. N.J. Stat. Ann. § 2A:14-2(a) mandates that "[e]very action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this State shall be commenced within two years next after the cause of any such action shall be accrued." All negligence actions fall under the two-year statute of limitations period of N.J. Stat. Ann. § 2A:14-2(a). *Leake v. Bullock*, 104 N.J. Super. 309, 311-12 (App. Div. 1969).

Pursuant to N.J. Stat. Ann. § 2A:14-2(a), Defendants have failed to bring timely negligence claims because the Lacaprias did not bring an action within the two-year statute of limitation period. Their allegations for negligence stem from the events leading up to the execution of their mortgage which occurred on October 20, 2005. Taking this date as the latest

point in time where negligence could have occurred, Defendants have failed to bring a cause of action within the mandated two-year limitations period.

  Recognizing their untimely claims, Defendants argue that the discovery rule should be applicable and the statute of limitations should be tolled to allow their claims.  Ordinarily, the statute of limitations for a cause of action is triggered from the moment of the wrong; however, New Jersey's discovery rule delays the accrual of a cause of action until the party "learns, or reasonably should learn the existence of a state of facts which may equate in law with the cause of action." *Fishbein Family P'ship v. PPG Indus.*, 307 Fed. Appx. 624, 626-27 (3d Cir. 2009) (quoting *Lopez v. Swyer*, 62 N.J. 267 (1973)).  In the applicable cases, the discovery rule provides that a "cause of action will be held not to accrue until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim." *Lopez,* 62 N.J. at 272.  The purpose of this rule is not to permit every belated discovery to overcome the statute of limitations, but to limit its application to parties who could not have reasonably discovered they had a basis for an actionable claim. *Burd v. New Jersey Tel. Co.*, 76 N.J. 284, 291 (1978).

  Defendants contend that Third Party Defendants and Plaintiff negligently hired, retained and supervised employees who reviewed the loan documents and conducted the closing.  Defendants argue that they needed a "sophisticated understanding of certain State and Federal law" in order to become of aware of such negligence.  Unfortunately, Defendants misconstrue the discovery rule standard—the rule tolls the statute of limitations until the time when a party reasonably could have discovered the basis for their claim, not necessarily the exact time when the claim was actually discovered.  In this case, Defendants' claims stem from the terms and execution of their mortgage loan.  As such, Defendants could have easily discovered any alleged

11

improper conduct at the time of the execution of the mortgage simply by reviewing the documents relating to the mortgage or seeking the advice of counsel.  While Defendants might not have discovered their negligence claims until 2008, Defendants could have discovered there was an actual claim through reasonable efforts during and around the time of the execution of the mortgage in October 2005.  Therefore, because the discovery rule is inapplicable, summary judgment is granted to Plaintiff and Third Party Defendants as to all negligence claims.

        v.   *Unconscionability*

Defendants bring claims against Plaintiff and Third Party Defendants for unconscionability based on the imposition of "excessive fees and costs," "overly onerous loan terms" and violations of "the covenant of good faith and fair dealing."  Generally speaking, "a contract is unenforceable if its terms are manifestly unfair or oppressive, and are dictated by a dominant party."  *Howard v. Diolosa*, 241 N.J. Super. 222, 230 (App. Div. 1990).  A party raising a claim of unconscionability has the burden of showing "some over-reaching or imposition resulting from a bargaining disparity between the parties, or such patent unfairness in the terms of the contract that no reasonable man not acting under compulsion or out of necessity would accept them."  *Rotwein v. Gen. Accident Group*, 103 N.J. Super. 406, 418 (Law Div. 1968).  Hence, a party needs to demonstrate both procedural unconscionability which identifies unfairness in the formation of the contract and substantive unconscionability which addresses disproportionate contract terms.  *Sitogum Holdings, Inc. v. Ropes*, 352 N.J. Super. 555, 564 (Ch. Div. 2002).  Procedural unconscionability "can include a variety of inadequacies, such as age, literacy, lack of sophistication, hidden or unduly complex contract terms, bargaining tactics, and the particular setting existing during the contract formation process.  *Id.*  To establish

substantive unconscionability, a party must show the "exchange of obligations so one-sided as to shock the court's conscience." *Id*. at 565.

Here, Defendants have not satisfied their burden of showing unconscionability in the execution of their mortgage contract.  In terms of procedural unconscionability, Defendants were provided with all the necessary documentation and information regarding their loan at the closing and all such terms, if read, were clear on the face of such documents.  Further, Defendants were given the opportunity to have counsel present during the execution of these documents and to ask questions of the closing agent.  Defendants were also able to dictate the location and setting of the loan closing.  Hence, there is no evidence of overreaching or manipulation in the formation of this contract.  Additionally, there is no evidence of substantive unconscionability as the terms of the agreement were not so one-sided or unfair to shock the conscious of the court particularly in light of the fact that such terms were actually requested by the Defendants in writing prior to the closing and Defendants were able to seek out another arrangement if desired.  Therefore, summary judgment is granted to Plaintiff and Third Party Defendants as to all claims for unconscionability.

      vi. *Unjust Enrichment*

Defendants allege claims against Plaintiff and Third Party Defendants for unjust enrichment in the execution of their mortgage contract.  "Unjust enrichment rests on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another."  *Assocs. Commercial Corp. v. Wallia*, 211 N.J. Super. 231, 243 (App. Div. 1986) (citing *Callano v. Oakwood Park Homes Corp.*, 91 N.J. Super. 105, 108 (App. Div. 1966)).  For a claim of unjust enrichment, a party must demonstrate that the other party "received a benefit and that retention of the benefit without payment thereof would be unjust."  *Id*.

In this case, Defendants have not established a cause of action for unjust enrichment. In executing their mortgage, Defendants were provided with a loan with set terms. As such, Defendants have received the benefit which was bargained for and are required to pay the agreed upon payments. Likewise, Plaintiff and Third Party Defendants are entitled to receive the agreed upon terms and fees and have not been unjustly enriched since contractually they are entitled to such payments. Therefore, summary judgment is granted to Plaintiff and Third Party Defendants as to all claims for unjust enrichment.

      vii. *Breach of Contract & Breach of Good Faith and Fair Dealing*

Defendants bring claims against Plaintiff and Third Party Defendants for breach of contract and breach of the covenant of good faith and fair dealings. Such claims are based on the fact that they were "told" prior to the execution of the loan documents that they would receive an interest rate of 7.338% with thirty-year term mortgage. However, any alleged oral discussions made prior to the execution of the documents are irrelevant. Defendants requested an ARM loan and after having an opportunity to review their loan documents and have counsel present executed their mortgage agreement. Defendants have not identified any act by Plaintiff or Third Party Defendants that constitutes a breach of this mortgage contract or the implied covenant of good faith and fair dealings. As such, summary judgment is granted to Plaintiff and Third Party Defendants as to all claims for breach of contract and breach of the covenant of good faith and fair dealings.

      viii. *Breach of Fiduciary Duty*

Defendants allege a breach of fiduciary duty stemming from the execution of their mortgage. In New Jersey, creditor-debtor relationships do not give rise to a fiduciary duty except in rare circumstances. *Globe Motor Car Co. v. First Fid. Bank N.A.*, 273 N.J. Super. 388,

393 (Law Div. 1993). Courts have noted that it "would be anomalous to require a lender to act as a fiduciary for interests on the opposite side of the negotiating table." *Paradise Hotel Corp. v. Bank of Nova Scotia*, 842 F.2d 47, 53 (3d Cir. 1988) (quoting *Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir. 1982)). In order to proceed with such a claim, a party must "overcome the heavy presumption that a lender-borrower arrangement is not ordinarily a special relationship subject to a fiduciary duty." *Patetta v. Wells Fargo Bank, N.A.*, No. 09-2848, 2009 U.S. Dist. LEXIS 82338, at *31 (D.N.J. Sept. 9, 2009).

     Defendants have not asserted any exceptional facts to overcome the presumption that no fiduciary duty existed between them and the Plaintiff and Third Party Defendants. The negotiation and execution of the mortgage loan was conducted at arms-length and was a standard financing contract between a bank and its customer. Defendants' reliance on First Hallmark and Banerman's alleged advice alone does not establish a fiduciary duty. Defendants have not identified any other exceptional facts or case law that supports their claim that a special relationship existed. As such, summary judgment is granted to Plaintiff and Third Party Defendants as to all claims for breach of fiduciary duty.

III.     **Conclusion**

For the reasons set forth above, the Plaintiff Deutsche Bank National Trust and Third Party Defendants First Hallmark Mortgage Corp, Howard Banerman, Agent Mortgage Co. and Citi Residential Lending's motions for summary judgment are granted.  In light of the lack of valid third party causes of action, all claims are also terminated against AMC Mortgage Services.  Therefore, all third party and counter claims have been dismissed.  The Court remands Plaintiff's foreclosure action back to the Superior Court of New Jersey, Chancery Division, Ocean County.  An appropriate Order accompanies this Opinion.

/s/ JOEL A. PISANO
United States District Judge

Date: March 1, 2010